This is an appeal from the judgment of the Superior Court of New Hanover, refusing to set aside a judgment rendered in that court in favor of the plaintiffs against the defendant. No counsel has appeared here in behalf of the defendant to show the objections taken by *Page 61 
him to the original judgment. One of these, however, is obvious on inspection of the record.
The judgment was rendered without appearance by the defendant, or previous process or notice to call him into court, or opportunity of making defense against the claim of the plaintiffs. Such a judgment must be regarded as a nullity, unless an authority to render it can be clearly shown. It is a principle not only of our law, but of universal law, that no one shall be condemned unheard.
It is said that the act entitled "an act to incorporate the (77) Wilmington and Raleigh Railroad Company" (see 2 Rev. Stat., p. 335), does distinctly confer this authority. If the act must obtain this construction then will be imposed upon us the duty of considering whether, under our Constitution, the Legislature can confer upon a court the power to render a judgment for one individual, or company of individuals, against another, without notice. But it is not decent to suppose that the Legislature willed such a violation of all legal usage, unless this intent appears upon the act too unequivocally to admit of a fair doubt.
The words of the enactment bearing directly on the point are those of the 11th section, declaring "that if any stockholder shall fail to pay the sum required of him on his subscription by the President and Directors, or a majority of them, within one month after the same shall have been advertised in some newspaper published at the seat of government, it shall and may be lawful for the said President and Directors, without furthernotice, to move for judgment in the county or Superior Court of Wake or of New Hanover, against the delinquent stockholder or his assignee, or both, for the amount of the installment required to be paid, at any court held within one year after the notice, and the court shall give judgmentaccordingly, or they may sue for the same in an action of assumpsit or by warrant according to the jurisdiction of the respective tribunals of the State." The words, "without further notice," it is said, show that previous
notice of the motion is dispensed with — and by the direction "that the court shall give judgment accordingly," it is obviously intended that such judgment shall be given at the term when it is prayed, and, of course, without issuing process to the defendant to show cause against the motion. It is admitted that the section will bear this construction, but we deny that such is its necessary meaning.
It will be seen on a little examination that the section will not stand a strict literal interpretation. The failure of payment, which is to subject the subscriber to a judgment, is by the words of the section, "a failure to pay the sum required within one month after the same shall have been advertised." Now, certainly the default contemplated was not the nonpayment of requisition for one month after advertisement (78) *Page 62 made, but for one month after the time when, according to the advertisement, it was required to be paid. Again the motion for judgment is according to the words of the act to be made in a court of Wake or New Hanover county within a year after the notice, and the only notice previously mentioned is the advertisement — but if the time is to be computed from the date of the advertisement the judgment might be rendered before the day on which the installment was required to be paid.
The section before us is not then expressed with such critical precision as to induce the belief that we shall best ascertain the legislative intent by a literal interpretation of the text. It must be helped by a reasonable construction to save it from absurdity — and the inquiry is, what is its reasonable construction in regard to the matter immediately under inquiry.
By other sections of the act books are to be opened at Raleigh, Wilmington, and other places, under the direction of the commissioners therein named, or of any three persons to be appointed by a part of those named, to receive subscriptions for stock; and on each share of $100 of stock subscribed the sum of $2 is to be paid down, and the residue in such installments and at such time as may be required by the President and Directors. By the terms therefore of his engagement the stockholder is entitled to notice from the President and Directors of every installment required, and the time at which the payment thereof is required before he is in default. When, therefore, the 11th section declares that a failure to pay within one month after the time when the payment is required to be made by an advertisement in a newspaper published at the seat of government, shall without "further notice" subject him to a motion for judgment, it certainly in terms enacts no more than the requisition so advertised, and the lapse of one month thereafter without payment shall be plenary evidence of the notice of the requisition to which the stockholder was entitled by the nature of his engagement; and the direction that the court shall give judgment accordingly imports no more than that judgment shall be rendered on motion for the sum so required (79) and neglected to be paid. By giving to the enactment this construction we satisfy every word of it. We may, indeed, conjecture that it means more, but we have no judicial certainty that it has a further meaning. The act authorizes the company to get a judgment by motion, and is silent as to the notice of that motion. This omission may occasion perplexity as to the mode of proceeding — whether a previous notice should be given of the intended motion, or upon the motion being made, process should issue to the defendant to show cause against it, but it cannot be understood as a legislative declaration that there may be judgment without notice, process, or appearance. Wherever a statute is *Page 63 
silent, it must be understood that the matter not therein provided for is left to the operation of the general rules of law. An abnegation to the defendant of the right of being heard against the alleged charge of being a defaulting subscriber, must be very plainly expressed before it can be supposed to have been intended.
It is said, however, that there is notice. The act authorizes the motion to be made only in some county or Superior Court of the counties of Wake or of New Hanover, within one year after the time of payment advertised, and this amounts to notice that the motion will be made at some one of the courts aforesaid, to be held during that period, and a subscriber cannot be heard to complain of the sort of notice which the charter prescribes. To this there are several sufficient answers. In the first place this implied notice is only to the delinquent stockholder, and when a judgment has been rendered against one who has not been heard, non constat but for the judgment that he was a stockholder at all. It would be a vicious circle of reasoning to hold that the notice authorized a judgment, and then that the judgment proved a notice. But this implied notice is not that which the lexterrae entitles a citizen to. To justify a judgment against him he must have a day in a court certain. It were a mockery to hold that notice to attend at the twelve courts to be holden during the year in the counties of Wake and New Hanover, for at some one of them the plaintiffs would move against him, was legal notice — a valid substitute for a process that would warrant a default for non-appearance.
It is argued also that when the right is conferred on the (80) plaintiffs to move for judgment against delinquent stockholders the course of proceeding is the same which the State pursues against her revenue officers, and there it has been held that notice to the officer is not necessary. The answer to this argument is that in the revenue law it is declared that no citation or other warning shall be required or be necessary preparatory to a judgment. The legislative will in those cases is express, and the only question which the judiciary can entertain about it is whether that will may consist with the will of the people declared in the Constitution. Our predecessors have held, and we suppose rightfully held, that in a case of revenue — between the State and its accounting officers — the Legislature may make the books of the treasury a record — and render it the duty of the courts on motion to issue executions for what shall thereon appear to be due. It is not for us now to say whether the Legislature can do this with respect to the books of an individual, or an association of individuals, in regard to his or their claims against other individuals. It will be time enough to determine that question when the Legislature shall have made a declaration of their will to do it. *Page 64 
It is argued that it was undoubtedly the purpose of the Legislature to favor the objects of the company, and for this purpose to facilitate the collection of its moneys, the essential and indispensable means of the successful prosecution of these objects; that for this end an option was given to the company to proceed against the delinquent members by motion or by suit in the ordinary forms of law, and that by this construction the benefit of the option will be in effect taken away, as there will be little difference of expedition between the different modes of proceeding. No doubt can be entertained that the Legislature did have at heart the great public improvement which it was the avowed object of this enterprising company to accomplish — and that the option presented in the charter for compelling payment of their moneys subscribed was believed to be an important privilege, but it by no means follows that our construction destroys the value of it. We hold no more than that it must be exercised with a sacred regard to a principal which lies at the bottom of all justice and fairness, which ought never to be violated, and (81) which the Legislature did not mean to violate — to pass on no man's rights until he has had the opportunity of being heard in their defense.
It is the opinion of this court that the judgment rendered against the defendant was null — that according to the established distinction between judgments void and judgments erroneous, it ought to have been set aside on the prayer of the defendant, and that the judgment of that court refusing to set aside should be reversed, with costs.
PER CURIAM. Judgment reversed.